IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD GENE IVY, | § | |
| TDCJ-CID NO.876332, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-2543 |
| | § | |
| OWEN MURRAY, D.O., *et al.,* | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff Ronald Gene Ivy, proceeding *pro se* and *in forma pauperis*, has filed a complaint (Docket Entry No.1) and an amended complaint (Docket Entry No.6) alleging violations of his civil rights under 42 U.S.C. § 1983. Plaintiff alleges that dental staff at the Ellis Unit of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and policy makers at the University of Texas Medical Branch ("UTMB") have deliberately denied or delayed treatment for his gum and tooth disease in violation of the Eighth Amendment. (*Id.*). He seeks compensatory and injunctive relief. (*Id.*). Defendants have filed a motion for summary judgment. (Docket Entry No.20). Plaintiff has filed a response to the motion. (Docket Entry No.24).

After consideration of the entire summary judgment record, the Court finds that plaintiff has failed to present an Eighth Amendment violation. Accordingly, the Court will grant defendants' motion for summary judgment and dismiss this case.

BACKGROUND

Plaintiff alleges the following chronology of events giving rise to this suit:

In June of 2002, Dentist Stinnett informed plaintiff that all of plaintiff's teeth needed to be extracted and his mouth fitted for dentures. Stinnett indicated that the process would take about a

year to complete.  Stinnett expressed concern about the deterioration of plaintiff's bone and gums from the infected teeth.  Stinnett pulled five teeth that day.

On January 24, 2003, a few days before a scheduled extraction, Dentist Smith saw plaintiff regarding a cavity.  She pulled one tooth and scheduled an appointment for the first of April, 2003, to extract the remaining top six teeth.

During the April 2003 appointment, Smith told plaintiff that UTMB had made policy changes regarding extractions and dentures.  Under the new policy, Smith would pull petitioner's remaining teeth but he would not be given dentures.  Upset that he had started the extraction process with the promise of dentures and would not be given dentures, plaintiff sought relief through the prison grievance system.  He was unsuccessful in obtaining relief.  He was, however, informed by grievance investigator Donna Valle that if he agreed to have the six top teeth pulled, he would receive dentures for his upper gum, but not his lower gum.  At that time, plaintiff had already had fifteen teeth extracted.  He had only had nine teeth on his lower gum.

Plaintiff filed the pending suit on July 10, 2003.  On August 8, 2003, Dr. Smith restated the new policy regarding dentures but told plaintiff that he was eligible to receive the dentures as promised.  (Docket Entry No.6).

At a hearing, held December 16, 2003, pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), Dr. Charles Adams testified that imprints of plaintiff's upper teeth had been made and upper dentures were being prepared.  Dr. Adams further indicated that the record was silent regarding lower dentures.  (Docket Entry No.13).  The Court dismissed plaintiff's claims against all defendants except UTMB administrators Dr. Owen Murray and Dr. Sonny Wells.

Based on the foregoing events, plaintiff alleges that defendants Murray and Wells were deliberately indifferent to his serious medical needs under the Eighth Amendment by the formation

and implementation of the new dental policy and by the delay in implementing his treatment plan.

Plaintiff seeks injunctive and compensatory relief.  Specifically, he wants the dentures  promised

by Dr. Stinnett, reimbursement of the $150.00 filing fee that he is paying to initiate this suit, and

punitive damages.  (Docket Entries No.1, No.5).

<u>DISCUSSION</u>

Defendants move for summary judgment on the following grounds:

1. Defendants are entitled to Eleventh Amendment immunity to plaintiff's claims against them in their official capacity;

2. Defendants did not act with deliberate indifference to plaintiff's serious medical needs; and,

3. Defendants are entitled to qualified immunity.

(Docket Entry No.20).

<u>Summary Judgment Standard</u>

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(c).  Once the movant presents a properly supported motion for summary judgment, "the burden

shifts to the nonmoving party to show with 'significant probative evidence' that there exists a

genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)

(quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  All evidence is construed "in the

light most favorable to the non-moving party without weighing the evidence, assessing its probative

value, or resolving any factual disputes."  *Williams v. Time Warner Operation, Inc.*  98 F.3d 179,

181 (5th Cir. 1996).

<u>Claims against Defendants in their Official Capacity</u>

To the extent that plaintiff seeks monetary damages from defendant Owen Murray, in his official capacity as the Associate Medical Director for UTMB Correctional Managed Care, and defendant Sonny Wells, in his official capacity as Dental Director for the Northern Region of UTMB, his claims must fail.  Eleventh Amendment immunity bars a suit in federal court by a citizen of a state against his own state or against a state agency or department.  *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990).  Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state.  *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).  This immunity extends to suits for monetary damages against state officials in their official capacity.  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").  Accordingly, plaintiff's claims for monetary damages against defendants Murray and Wells in their official capacity will be dismissed.

<u>Claims against Defendants for Injunctive Relief</u>

A plaintiff, however, may seek prospective injunctive relief against a state official under the exception to Eleventh Amendment immunity pursuant to *Ex parte Young* and its progeny.  209 U.S. 123 (1908); *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Edelman v. Jordan*, 415 U.S. 651, 666-68 (1974).  "This exception only applies when the named defendant state officials have some connection with the enforcement of the act and 'threaten and are about to commence proceedings' to enforce the unconstitutional act.  *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (quoting *Young*, 209 U.S. at 155-56).

In this case, no one disputes that both defendants had some connection with the implementation of the new dental policy, which restrict dentures to only those inmates with a medical need.  Moreover, no one disputes that plaintiff received a full plate of upper dentures and a partial plate of lower dentures on May 14, 2004, in accordance with the dental plan set forth by Dr. Stinnett.  Because plaintiff has received the relief that he sought, he cannot show that defendants are adverse parties who have threatened or are about to commence enforcement of the dental policy with respect to his dental plan.

"[A] request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined."  *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).  A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.  *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999).  Plaintiff's claim for injunctive relief is moot and will be dismissed.

<u>Claims against Defendants in their Individual Capacity</u>

Plaintiff claims that the dental treatment that he was promised in 2002 was delayed as a result of defendants' implementation of the new UTMB policy, which restricted dentures to inmates when medically required.  Plaintiff claims from April of 2003, when the policy was first announced, until August of 2003, when the original treatment was resumed following a modification of the new policy, he experienced significant physical pain and distress from the failure to treat his serious dental condition.  Although neither defendant was personally involved in plaintiff's dental treatment, plaintiff claims they were deliberately indifferent to his serious medical needs because they formulated and implemented the policy that delayed his treatment.

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  *Estelle v. Gamble*, 429 U.S. 97,

104 (1976).  A prisoner may allege dental problems to demonstrate a "serious medical need" for purposes of a civil rights cause of action.  *See Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995) (inmate suffering from swollen and infected mouth for one month could have serious medical need); *Hunt v. Dental Department*, 865 F.2d 198, 201 (9th Cir. 1989) (inmate with no dentures suffering severe pain, bleeding gums, and breaking teeth could have serious medical need); and *Matzker v. Herr*, 748 F.2d 1142 (7th Cir. 1984) (inmate with three broken teeth had serious medical need), *overruled on other grounds by Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  *Estelle*, 429 U.S. at 104-05.  Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  In this case, the record does not show that defendants acted with deliberate indifference to plaintiff's serious medical needs or intentionally delayed his dental treatment.

Dr. Jean Poskus, the Dental Director for the Houston Cluster of UTMB-Correctional Managed Care, attested by affidavit attached to defendants' motion for summary judgment (Docket Entry No.21, Exhibit A) to the following with respect to plaintiff's dental treatment:

> On 6/21/02 a comprehensive treatment plan was done.  Extractions, full/partial or full/full dentures were treatment planned depending on the condition of remaining teeth #22 through #29.  A series of appointments followed (6/21/02, 9/13/02, 11/12/02 & 1/24/04) where Mr. Ivy consented to having extractions.  The extractions were done the same day the consent forms were signed.  A Refusal of Treatment form was signed on 1/7/03 for #32 because he felt dental personnel were upset that day.  He eventually had #32 extracted on 1/24/03.

> On 3/7/03, Dr. A.D. Wells announced, effective immediately, no new prosthetic cases would be initiated unless it was judged medically necessary. . . .  On 4/1/03, Dr. Barbara Smith advised Mr. Ivy of the March 7th directive.  At that point Mr. Ivy refused additional extractions.  On 4/28/03, Dr. Wells announced, effective

6

immediately, that treatment plans on or before 3/7/03 which provided for a prosthetic appliance should be completed. . . . Mr. Ivy was seen 6/20/03 and advised that he was eligible to have his prosthetic appliances completed. At that point Mr. Ivy continued to receive treatment which culminated in him receiving a full/partial denture on 5/14/04.

(*Id.*) (citations omitted).

In his response to the summary judgment motion, plaintiff contends that from April 1, 2003, until treatment resumed on August 8, 2003, he was told that the procedure he and Dr. Stinnet agreed upon in 2002 would not be honored. (Docket Entry No.24). He claims that he refused treatment after April 1, 2003, because UTMB dental staff refused to complete a process for dentures that was already in progress. He maintains that he did not receive treatment until August 8, 2003, almost a month after he filed suit, even though he begged for dental care on June 23, 2003, July 3, 2003, and July 24, 2003. Plaintiff claims he suffered extreme pain for 130 days from April until August, for want of dental care.

The record, however, shows that plaintiff received dental care when requested and was informed in June of 2003, before he filed suit, that he would receive the dentures that Dr. Stinnett had promised. Plaintiff's records attached to his original complaint show that he was informed by a grievance investigator on June 6, 2003, that if he agreed to extract his upper teeth, he would receive an upper denture plate. (Docket Entry No.1, Attachments). Plaintiff's sick call request, dated June 17, 2003, indicates that plaintiff understood the investigator's response regarding the treatment plan. (*Id.*). Plaintiff's medical records attached to defendants' motion for summary judgment show that he was seen by Dr. Smith on June 20, 2003, pursuant to the June 17th sick call request. At that time, plaintiff indicated that he wanted dentures. Dr. Smith noted that plaintiff has a plan for extractions and complete dentures. She wrote, "[p]er the UTMB dental director he is now eligible to have a complete denture made." (Docket Entry No.20, Exhibit B). Plaintiff was next

seen on August 8, 2003, on a routine recall.  (*Id.*).  There is no evidence that plaintiff submitted sick call requests to be seen by a dentist on June 23, 2003, July 3, 2003, or July 24, 2003, for extreme tooth or gum pain or that he was denied dental treatment during that time.  Furthermore, there is no evidence that defendants had any involvement in scheduling plaintiff's dental appointments or that he suffered any substantial harm as a result of the 130 day delay.

The record shows that plaintiff was upset that a new UTMB directive would leave him nearly toothless, without hope of the dentures that he had been promised.  Although the directive was modified shortly after its implementation to accommodate inmates, like plaintiff, who were already in treatment, plaintiff did not receive notice of the modification for a couple of months after the directive was modified.  Even after he received notice that he was eligible to resume treatment and receive dentures, plaintiff was unhappy with the pace of treatment and filed suit.  A month later, the extractions resumed.

Plaintiff's dissatisfaction with the pace of the dental treatment in this case does not give rise to a claim that defendants were deliberately indifferent to his medical needs nor that they intentionally delayed his treatment.  Likewise, his dissatisfaction with the new UTMB policy does not give rise to a claim that defendants violated his Eighth Amendment right to treatment for a serious medical condition.  *See Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002) (holding supervisory liability exists even without overt personal participation in the offensive act if the supervisor implements a policy that is itself a repudiation of constitutional rights and is the moving force of the constitutional violation).  Shortly after implementing the new policy, defendants modified it to provide treatment for offenders, like plaintiff, who were already scheduled to receive dentures. Plaintiff received the treatment he needed without incurring substantial harm.

Accordingly, the Court will grant defendants' motion for summary judgment and dismiss this complaint with prejudice.

<u>CONCLUSION</u>

Finding no constitutional error, the Court ORDERS the following:

1.   Defendants' motion to supplement Exhibit A to their motion for summary judgment (Docket Entry No.21) is GRANTED.

2.   Plaintiff's motion for a default judgment against defendants (Docket Entry No.22) is DENIED.

3.   Plaintiff's motion to appoint counsel (Docket Entry No.23) is DENIED.

4.   Defendants' motion for summary judgment (Docket Entry No.20) is GRANTED.

5.   Plaintiff's civil rights complaint is DISMISSED with prejudice.

The Clerk shall provide copies of this Order to the parties.

SIGNED at Houston, Texas, on this 26th day of July, 2005.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE